UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LAILA KUPERMAN, CATHERINE E. LYLES, and JASON J. RICKS | * | CIVIL ACTION NO. 08-565 |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| VERSUS | * | SECTION J (3) |
| | * | |
| ICF INTERNATIONAL, ICF CONSULTING | * | JUDGE CARL J. BARBIER |
| GROUP, LLC, ICF EMERGENCY | * | |
| MANAGEMENT SERVICES, LLC, QUADEL | | |
| HOUSING SERVICES, INC. AND UNKNOWN | | |
| COMPANIES 1-8 | | |
| | | |
| Defendant. | * | MAGISTRATE DANIEL E. |
| | * | KNOWLES, III |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN OPPOSITION TO MOTION TO CERTIFY A COLLECTIVE CLASS OF PERSONS "SIMILARLY SITUATED" PURSUANT TO 29 U.S.C. §216(b) BY QUADEL HOUSING SERVICES, INC.

MAY IT PLEASE THE COURT:

## I.   INTRODUCTION

Defendant Quadel Housing Services, Inc. ("QHS") appears herein to oppose the plaintiffs' motion to certify this matter as a collective action pursuant to 29 U.S.C. § 216(b) (R. Doc. 42). This matter should not be certified as a collective action because the plaintiffs have not shown that other individuals are similarly situated. If this court determines that certification is appropriate, QHS urges this court only to conditionally certify the class and to adopt QHS's

298329.2

definition of the putative class, which more accurately and specifically identifies the class of persons the plaintiffs may appropriately represent.

## II.    BACKGROUND

QHS is a subcontractor of ICF Emergency Management Services, L.L.C. on Louisiana's Road Home Program, a housing recovery program implemented following Hurricanes Katrina and Rita. Through the Road Home Program, Louisiana homeowners affected by Hurricanes Katrina and/or Rita are eligible to receive compensation for the damage to their homes.[1]

As a Road Home Program subcontractor, QHS maintains its own employee policies and procedures, including timekeeping policies. It is and always has been QHS's policy that employees record all hours worked on their time sheets. QHS has the ultimate responsibility to hire, fire, discipline and manage its employees, including the approval of employee time sheets.[2]

ICF Emergency Management Services, L.L.C. and the other related ICF entities named as defendants in this suit are separate and distinct entities from QHS. QHS and the ICF entities do not have common owners, do not share human resources, labor relations or business operations. QHS does not have financial control over the ICF entities and vice versa. Likewise, QHS does not hire, fire or discipline ICF employees and the ICF entities do not hire, fire or discipline QHS employees.[3]

The named plaintiffs Laila Kuperman, Catherine Z. Lyles and Jason Ricks filed suit against ICF Emergency Management Services, LLC and other related ICF entities and QHS alleging that the defendants owe persons in the "C.A.Rs Department" overtime compensation pursuant to 29 U.S.C. § 207(a)(1).[4] The plaintiffs allege that the C.A.Rs Department is

---

[1] Exhibit A – Declaration of Beatrice Camino.
[2] Exhibit A.
[3] Exhibit A.
[4] R. Doc 25, ¶ 1.

comprised of Housing Advisors, Closing Advisors (Pre-Closing and Post-Closing), Appeals Advisors, Resolution Advisors and Analysts.[5]

It is undisputed that QHS and ICF's Advisors and Appeals Analysts were originally classified as exempt from the FLSA's overtime requirements and, after the positions were reclassified, were paid overtime for all hours over 40 in a work week reported on their timesheets before Advisors and Appeals Analysts were reclassified.[6] Thus, the plaintiffs lawsuit can be pared down to two allegations; they claim they were wrongfully classified as exempt and they claim they worked "off the clock" and were not paid for those hours.

A.    C.A.Rs Department Advisors and Appeals Analysts

In the Fall of 2006, QHS began employing Housing Advisors in the Road Home Program's Closing, Appeals and Resolutions Department ("C.A.Rs Department"), who handled pre-closing, post-closing and appeal activities for Road Home applicants.    Some C.A.Rs Department Advisors worked solely in the areas of closings, appeals or resolutions, while other C.A.Rs Department Advisors performed work in all three areas.  Prior to April 1, 2007, the C.A.Rs Department was located in Baton Rouge, Louisiana, at the Goodwood and Anselmo Road Home locations.[7]

In June 2007, the C.A.Rs Department formally split into several teams:  Pre-Closing, Resolutions, Post-Closing (Grant Recovery and Grant Review) and Appeals.  In May 2008, a Customer Service Team was created.   QHS employs Advisors in each of these teams.  At the time the C.A.Rs Department formally split into these teams, which was after the Department of Labor investigation discussed below, the advisors were classified as non-exempt.[8]

---

[5] *Id.*
[6] Exhibit A; Pls. Exhibits A and B.
[7] Exhibit A.
[8] Exhibit A.

In June 2007, QHS also began employing Appeals Analysts in the C.A.Rs Department who were responsible for reviewing homeowner appeals and had the unilateral authority to make determinations thereon. Appeals Analysts were initially classified as exempt from the FLSA's overtime requirements.

**B.    Department of Labor Investigation**

In March, 2007, the Department of Labor began investigating whether QHS's Housing Advisors, including C.A.Rs Advisors, were properly classified as exempt under the FLSA. All of QHS's Advisors were collectively referred to as "Housing Advisors" by the Department. QHS cooperated with the Department's investigation and voluntarily reclassified the Advisors as non-exempt effective April 1, 2007. The Department calculated back wages owed to each Advisor pursuant to the fluctuating work week regulation, 29 C.F.R. § 778.114, and supervised QHS's settlement with the Advisors.[9] QHS paid the Housing Advisors the amount determined by the Department and an additional gratuitous payment equal to the difference between the amount stated by the Department using the fluctuating work week regulation and the amount of overtime if calculated pursuant to the time and a half method.[10] The Department supervised settlement concluded on November 28, 2007.[11]

Effective February 4, 2008, QHS reclassified its Appeals Analysts as non-exempt under the FLSA. QHS calculated the additional wages that would have been paid to Appeals Analysts for all hours worked over 40 in a work week from the inception of the position and paid the Appeals Analysts this additional amount. QHS also changed the title of this position to Appeals Advisor.[12]

---

[9] Exhibit A.
[10] Exhibit A.
[11] See Pls.' Exhibit B – pp 0054-0056.
[12] Exhibit A.

298329.2

4

## III.   LAW AND ARGUMENT

### A.   Law Governing FLSA Collective Actions

The FLSA authorizes a collective action for alleged violations of the Act only by "one or more employees for and in behalf of himself or themselves and other employees similarly situated."[13]   Collective actions under 29 U.S.C. § 216(b) are distinct from class actions under Rule 23 of the Federal Rules of Civil Procedure.   The most significant difference is that a judgment in a Rule 23 class action is binding on all members of a class except those who "opt out" of the class, while a judgment pursuant to a 29 U.S.C. § 216(b) collective action is binding only on those members who "opt in."[14]

The leading Fifth Circuit case on collective actions, *Mooney v. Aramco Serv. Co.,*[15] discusses two general approaches to address certification of a collective action and the meaning of "similarly situated" in 29 U.S.C. § 216(b).   One approach, based on *Lusardi v. Xerox Corp.,*[16] involves a two-step analysis.   The other approach is based *Shushan v. Univ. of Colorado*[17] and involves an analysis of "similarly situated" akin to the analysis employed under Fed. R. Civ. P. 23.[18]   The *Mooney* court followed the *Lusardi* analysis without expressly adopting or approving either approach.[19]

According to *Lusardi*, the first determination is made at the "notice stage," based on the pleading and any affidavits which have been submitted.   At this stage, the court determines whether the potential class members are "similarly situated" to the named plaintiffs such that

---

[13] 29 U.S.C. § 216(b).

[14] *Lachapelle v. Owens-Illinois, Inc.,* 513 F.2d 286, 289 (5th Cir. 1975)

[15] 54 F.3d 1207 (5th Cir. 1995).

[16] 118 F.R.D. 351 (D. N.J. 1987), *mandamus granted in part, appeal dismissed, Lusardi v. Lechner,* 855 F.2d 1062 (3rd Cir. 1988), *vacated in part, modified in part, and remanded, Lusardi v. Xerox Corp.,* 122 F.R.D. 463 (D. N.J. 1988), *aff'd in part, appeal dismissed, Lusardi v. Xerox Corp.,* 975 F.2d 964 (3rd Cir. 1992), *rev'd on other grounds, Desert Palace Inc. v. Costa,* 539 U.S. 90, 123 S.Ct 2148, 156 L.Ed.2d 84 (2003).

[17] 132 F.R.D. 263 (D. Colo. 1990).

[18] The plaintiffs have not sought certification under the *Sushan* approach and QHS reserves any arguments against certification pursuant to *Sushan.*

[19] *Mooney,* 54 F.3d at 1216.

298329.2

notice of the action should be given to potential class members.[20] If the court "conditionally certifies" the class, notice is given to the putative class members with the opportunity to "opt-in."[21]

Potential class members are considered "similarly situated" to the named plaintiffs if they are "'similarly situated' with respect to their job requirements and with regard to their pay provisions."[22] While the standard at this stage is fairly lenient, conditional certification is not automatic.[23] To make a meaningful decision about whether certain people are similarly situated requires as a factual foundation information about who is in the potential class and the basis for inferring that the potential members are similarly situated.[24] Additionally, the plaintiff must make a showing that allegedly similarly situated individuals want to opt-in to the lawsuit.[25] If the cause of action arises from circumstances purely personal to the plaintiff and not from any generally applicable rule, policy or practice, a court may deny the plaintiff's right to proceed collectively.[26]

The second step, accordingly to *Lusardi,* is typically the consequence of a motion for "decertification" filed by the defendant after discovery is largely complete. At this stage, the court is able to make a much more informed factual determination on the similarly situated question.[27]

---

[20] *Id.,* at 1213-14.

[21] *Id.,* at 1214.

[22] *See Dybach v. State of Florida Department of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Ryan v. Staff Care, Inc.,* 497 F.Supp.2d 820, 824-825 (N.D. Tex. 2007).

[23] *Treme v. HKA Enterprises, Inc.,* No. 07-1134, 2008 WL 941777, *2 (W.D. La., April 7, 2008) (citing *Badgett v. Texas Taco Cabana, L.P.,* 153 Lab.Cas.P. 35,224 (S.D.Tex .10/12/2006)).

[24] *Armstrong v. Weichert Realtors,* Civ. No. 05-3120, 2006 WL 1455781 *1 (D. N.J. May 19, 2006).

[25] *See Prater v. Commerce Equities Mgmt. Co.,* No. H-07-2349, 2007 WL 4146714, at *4 (S.D. Tex. Nov. 19, 2007(A plaintiff must make a minimal showing that there is a reasonable basis for crediting the assertion that aggrieved individuals exist, that the aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and the individuals want to opt-in to the lawsuit).

[26] *Ryan,* 497 F.Supp.2d at 825 (quoting *Donohue v. Francis Services, Inc.,* Civ. A. No. 041-170, 2004 U.S. Dist. LEXIS 9355, *1 (E.D. La. May 24, 2004) (citations omitted)); *Mooney,* 54 F.3d at 1214 n. 8.

[27] *Mooney,* 54 F.3d at 1214.

298329.2

6

**B.**     **The Plaintiffs Have Failed To Demonstrate That They Are Similarly Situated To Other Employees**

The plaintiffs bear of the burden of establishing that they are similarly situated with the class they seek to represent.[28] While the burden may not be heavy, "unsupported assertions of widespread violations are not sufficient."[29] The plaintiff must make a sufficient showing to demonstrate that he and potential class members were victims of a common scheme or plan that violated the law.[30]

In *England v. New Century Financial Corporation*,[31] the court refused to certify a collective action because the plaintiffs failed to produce evidence of a company-wide policy involving the alleged claims. The employees filed suit alleging a nationwide policy by which management instructed the Loan Officer plaintiffs not to record their overtime hours. The evidence presented in support of certification consisted of plaintiffs' declarations that defendant's managers at 70 of 80 branch offices instructed Loan Officers not to record overtime hours. Refusing to certify the case as a collective action, the Court found that it was clear that the case involved a multitude of different managers at different geographical locations across the country. The affidavits submitted by the plaintiffs were insufficient to establish the existence of a nationwide illegal policy as required. Instead, the evidence supported the Court's conclusion that the alleged claims were based on local policies of various managers located at different sites. Additionally, the Court found that if liability was found at one location, it would not necessarily require the Court of also find liability at another location.[32]

---

[28] *Freeman v. Wal-Mart Stores, Inc.*, 256 F.Supp.2d 941, 945 (W.D. Ark. 2003)
[29] *Id.*
[30] *Hoffman v. Sbarro, Inc.*, 982 F.Supp. 249, 261 (S.D. N.Y. 1997).
[31] 370 F.Supp. 2d 504 (M.D. La. 2005).
[32] *Id.*, at 511.

298329.2

The plaintiffs in this case have likewise failed to establish the existence of a company-wide policy. Plaintiffs Kuperman, Lyles and Ricks state that they personally observed other employees, with job titles and duties similar to their own, working over 40 hours per week.[33] Plaintiffs Kuperman, Lyles and Ricks also state that they were told by their managers or supervisors to only record 40 hours per week.[34] However, they provide no information concerning their work locations, do not identify the managers/supervisors who allegedly told them to only record 40 hours per week or allege that any other employees were told by their managers or supervisors to record only 40 hours of work. Furthermore, the plaintiffs have not alleged that these managers and/or supervisors oversaw all employees with the same job title or that Advisors or Appeals Analysts supervised by other managers and supervisors or who were employed at different locations were given the same instruction.

Plaintiff Lyles, the only Named Plaintiff employed by QHS, worked at the Goodwood Road Home location. Opt-in Plaintiffs Tieneka Johnson, La'Kedra Williams and Niaja Jackson were employed by QHS and also worked at one or both of the Baton Rouge, Louisiana, Road Home locations. QHS did not employ the other named plaintiffs or opt-in plaintiffs.[35]

Each Road Home location is managed by a Center Manager and an Assistant Center Manager. Advisors and Analysts are directly supervised by Team Leads, who report to the Assistant Center Manager or Center Manager. QHS employed as many as many as 68 to 70 unique Team Leads in 35 to 40 Team Lead positions at 13 different locations at the peak of the Road Home Program.[36] The plaintiffs have failed to present any evidence that all Team Leads or center managers made similar statements to all other Advisors. At best, the plaintiffs have

---

[33] See Pls. Exhibits D, E and M.
[34] Id
[35] Exhibit A.
[36] Exhibit A.

298329.2

alleged that their individual manager or supervisors told them to record only 40 hours per week. Accordingly, the plaintiffs have failed to allege that an alleged cause of action by putative class members arises from a generally applicable rule, policy or practice justifying certification of this matter as a collective action.   Further, with regard to the plaintiffs employed by QHS, the plaintiffs were employed at the Goodwood and/or Anselmo Road Home locations.   Including persons employed at other Road Home locations is, therefore, improper.

QHS employees are not similarly situated to persons employed by ICF Emergency Management Services.  QHS only employed four of the plaintiffs in this suit:  Catherine Lyles, Niaja Jackson, La'Kedra Williams and Tieneka Johnson.   QHS did not employ the other plaintiffs.  QHS and ICF Emergency Management Services, L.L.C. are separate and distinct entities, associated through their subcontract agreement for the Road Home program.  They do not share human resources, labor relations or personnel functions.  Neither hires, disciplines or fires the other's employees nor do they withhold federal or state employment taxes for the other's employees. ICF Emergency Management  and QHS do not share operations, do not have common owners and do not have financial control over each other.   QHS also received no services  directly  from  ICF  Emergency  Management  employees  and  ICF  Emergency Management received no services directly from QHS.[37]  ICF Emergency Management Services and QHS are not joint employers and an alleged cause of action against one does not give rise to a cause of action against the other, unrelated company.

The plaintiffs have also failed to demonstrate that they are similarly situated with respect to their job duties.  Plaintiff Kuperman states that she was employed by ICF as a Housing Advisor, a Resolutions Advisor and later an Appeals Analyst.   While Plaintiff Kuperman provides some limited information about her duties as a Housing Advisor, her affidavit is

---

[37] Exhibit A.

completely devoid of a description of her duties as a Resolutions Advisor and an Appeals Analyst other than stating that her duties as a Resolutions Advisor were similar to her duties as a Housing Advisor. [38]

Plaintiff Lyles states that she was employed by ICF as a Housing Advisor and a "CARS" Advisors. Later, she became employed by QHS as an Appeals Analyst. Plaintiff Lyles provides some information about her duties as a Housing Advisor and "CARS" Advisors and even less information about her duties as an Appeals Analyst. [39]

Plaintiff Ricks states that he was employed by ICF as a Housing Advisor and later a "Closing Advisor." He provides some information about his duties as a Housing Advisor and "Closing Advisor."[40]

In general, the Named Plaintiffs and Opt-in Plaintiffs may be similar in that they were subject to a similar job titles. However, they have not established that all Housing Advisors and Appeals Analysts performed identical tasks. Faced with similar circumstances, Judge Vance recently found when decertifying a collective action that, in terms of individual job duties, the opt-in plaintiffs, who were all assistant store managers of Big Lots stores, had different responsibilities from one another and that individuals themselves had different duties from day-to-day and within a single day. This diversity in individual employment situations inhibited the defendant from proving its statutory exemption defense as to all 936 opt-in plaintiffs on the basis of representative proof.[41] QHS is faced with similar challenges which prevent certification of this matter.

---

[38] See Pls. Exhibit C.
[39] See Pls. Exhibit D.
[40] See Pls. Exhibit E.
[41] *Johnson v. Big Lots Stores, Inc.*, 2008 WL 2488629 (E.D. La. 6/20/08), attached as Exhibit B.

298329.2

The Named Plaintiffs provide only some generalized information about their job duties. They do not address their specific job functions and responsibilities which may have changed on a daily basis. As a C.A.Rs Advisor, the plaintiffs may have worked solely in appeals, resolutions or closings or they may have worked in all three of these areas. After the C.A.Rs Department split into teams in June 2007 and QHS began employing Appeals Analysts, the plaintiffs' job duties and responsibilities would have varied greatly from employees in other positions.[42] Given the evolving nature of the Road Home Program and that the plaintiffs were employed in positions that were separate and distinct from others, the plaintiffs cannot establish that they are similarly situated to any other employee. To determine whether an individual employee was wrongfully classified as exempt will require a fact intensive, case-by-case analysis making this matter inappropriate for certification.

Moreover, as discussed above, one of plaintiffs' claims against QHS is whether they worked "off the clock" without receiving compensation for those hours. These claims themselves demonstrate that the plaintiffs are not similarly situated.

Plaintiff Kuperman alleges that she would "*often* work up to *approximately* 30 hours in excess of [her] regular 40 hour work week."[43] Plaintiff Lyles alleges that she would "*often* work up to *approximately* 20 hours in excess of [her] regular 40 hour work week."[44] And Plaintiff Ricks only asserts that he did not receive compensation for all hours worked over 40.[45] Each plaintiff may potentially claim that on any given day he or she worked hours outside their regular schedule and was not compensated for those hours. The circumstances of such claims vary too greatly to conclude that all plaintiffs are similarly situated.

---

[42] See Exhibit A.
[43] Pls' Exhibit C, ¶ V (emphasis added).
[44] Pls' Exhibit D, ¶ IX (emphasis added).
[45] See Pls.' Exhibit E.

298329.2

C.    **The Plaintiffs' Proposed Definition Must Be Rejected**

Assuming for purposes of this opposition that this matter is conditionally certified as a collective action, QHS objects to the plaintiffs' proposed class definition and urges this Court to adopt a definition which accurately and specifically defines the putative class.  The plaintiffs' proposed definition for the collective class is overly broad, includes persons who could not possibly have a claim against QHS and would only serve to mislead and confuse potential class members and constitutes an impermissible, court-approved solicitation in violation of the FLSA. The plaintiffs suggests that this Court adopt an impermissibly broad class definition as follows:

> All current and former salaried employees of ICF International, ICF Consulting Group, L.L.C., ICF Emergency Services, Inc. (collectively "ICF") and Quadel Housing Services, Inc. ("Quadel), who a) occupied the position(s) of Housing Advisor, Analyst, or any similar position in support of ICF's role in administering the Louisiana Road Home Program, along with that of its subcontractor Quadel; b) were initially classified as "administratively exempt" under 29 U.S.C. § 213(a)(1) by ICF or Quadel; and c) and who worked more than 40 hours each week without being paid time and a half for the hours worked over 40 per week.

The plaintiffs also suggest that the putative class should not include any individual whose claim as prescribed by any applicable statute of limitations prior to the filing of the Complaint.

The plaintiffs' proposed class definition is fatally flawed; it is so overly broad and imprecise that it would include Housing Advisors, Analysts or others who would never be entitled to damages even under the plaintiffs' proposed definition.

1.    **The plaintiffs do not adequately define the positions they seek to represent**

The proposed class includes "Housing Advisors," "Analysts" and "other similar positions."  The plaintiffs do not define "other similar positions" except to allege in footnote 18 of their memorandum in support that other similar and related positions are found in the

defendants' "C.A.Rs Department" which is comprised of Housing Advisors, Closing Advisors (Pre-Closing and Post-Closing), Appeals Advisors, Resolutions Advisors and Analysts.[46]   In their Complaint, the plaintiffs allege that they are filing suit on behalf of "Intake Personnel" defined as persons in the "C.A.Rs Department" comprised of Housing Advisors, Closing Advisors (Pre-Closing and Post-Closing), Appeals Advisors, Resolutions Advisors and Analysts.[47]

As previously discussed, the C.A.Rs Department employed Housing Advisors, but eventually split into several teams.  QHS does not employ persons with the title "Analyst" in the C.A.Rs Department.  It is QHS's understanding that ICF likewise does not employ persons with the title "Analyst" in the C.A.Rs Department.  QHS employed Appeals Analysts and later re-named the position Appeals Advisors.[48]

Piecing together the allegations in the plaintiffs' motion and complaint, an appropriate definition of the putative class would specifically and accurately identify the positions which the plaintiffs seek to represent.  QHS urges this court to adopt a definition which defines the class as persons who are or were employed as Housing Advisors or Appeals Analysts in the C.A.Rs Department of the Road Home Program.

Plaintiffs are only seeking to represent persons employed in the C.A.Rs Department.[49] The Pre-Closing, Resolutions, Post-Closing (Grant Recovery and Grant Review), Appeals Advisor and Customer Service Advisor designations were not formally created until after the DOL investigation and the Housing Advisors were reclassified as non-exempt.  Thus, an

---

[46] R. Doc. 42.2.
[47] R. Doc. 1.
[48] Exhibit A.
[49] R. Doc. 25 ¶ 1.

298329.2

accurate description of the class the plaintiffs seek to represent would not reference these positions.

> **2.     QHS Housing Advisors were paid an overtime premium pursuant to the fluctuating work week regulation**

The plaintiffs' proposed definition is limited to those persons who worked more than 40 hours each week without being paid time and a half for the hours worked over 40 per week.  As previously discussed, QHS voluntarily reclassified its Housing Advisors and worked with the Department of Labor to compensate its Housing Advisors for all hours worked over 40 in a work week pursuant to the FLSA.  The Department of Labor found that QHS presented evidence allowing QHS to pay overtime pursuant to the fluctuating work week regulation, 29 C.F.R. § 778.114.[50]  Accordingly, QHS was not required to pay overtime at time and a half of the employee's regular rate of pay.

Defining the class as those persons who did not receive time and a half for hours worked over 40 will likely lead to confusion among potential class members and cause QHS to litigate matters which have already been resolved by the Department of Labor.  Therefore, QHS urges this Court to adopt a definition which limits the class to those worked more than 40 hours a week without being paid overtime for the hours worked over 40 per week as required by the FLSA.[51]

> **3.     The plaintiffs' definition includes those persons who have executed a Department of Labor Form WH-58 waiver**

In conjunction with the Department of Labor investigation and payment of back wages, the Department authorized the use of its Form WH-58, Receipt of Payment of Lost or Denied Wages, Employment Benefits or Other Compensation.  Employees who executed the Form WH-58 acknowledged QHS's payment in full of all unpaid wages owed through April 1, 2007 and

---

[50] See Pls.' Exhibit B – PF0039.
[51] Exhibit A.

298329.2

14

that the employee was waiving any right he or she had to file suit under Section 16(b) of the FLSA.[52]

29 U.S.C. § 216(c) authorizes the Department of Labor to supervise settlement of FLSA claims and individuals who execute the Department's Form QH-58 waive their claims for unpaid wages.[53]   The Department of Labor determined that 174 QHS Housing Advisors were due overtime wages.[54]   Of those 174 Housing Advisors, 39 did not execute a Form WH-58.[55]   The putative class in this matter should not include the 135 Housing Advisors who executed a Form WH-58.

**D.   QHS's Alternate Class Definition**

Although QHS argues that this matter should not be certified, conditionally or otherwise, as a collective action, should the Court determine that conditional certification is appropriate, QHS urges the Court to adopt the following definition, which more specifically and accurately defines the class of persons the plaintiffs seek to represent:

> All current and former salaried employees of ICF Emergency Services, Inc. ("ICF") and/or Quadel Housing Services, Inc. ("QHS"), who: a) occupied the position(s) of Housing Advisor or Appeals Analyst in the Road Home Program's C.A.Rs Department; b) were initially classified as "administratively exempt" under 29 U.S.C. § 213(a)(1) by ICF or QHS; c) who worked more than 40 hours each week without being paid overtime for the hours worked over 40 per week as required by the Fair Labor Standards Act; d) who did not execute a Form WH-58, Receipt of Payment of Lost or Denied Wages, Employment Benefits or Other Compensation, in connection with the Department of Labor's investigation of wages paid by ICF and QHS to Housing Advisors; and e) whose claim for overtime compensation has not prescribed by the applicable statute of limitations.

---

[52] Exhibit A.
[53] *Dent v. Cox Communications Las Vegas, Inc.*, 502 F.3d 1141 (9th Cir. 2007);   *See also Niland v. Delta Recycling Corp.*, 377 F.3d 1244 (11th Cir. 2004)(waiver language which was identical to the Form WH-58 waiver and approved by the Department of Labor created an enforceable waiver).
[54] Pls.' Exhibit B – PF0039; Exhibit A.
[55] Exhibit A;  See also Pls' Exhibit B – PF0042 - PF0056.

298329.2

## IV.    CONCLUSION

The plaintiffs have not carried their burden of demonstrating that a collective action should be certified under the *Lusardi* standard.  The plaintiffs have failed to provide the Court with sufficient information about the class they seek to represent and are not similarly situated to the putative class.  Because the plaintiffs have not made the showing required to certify this matter as a collective action, their motion should be denied.  In the alternative, the plaintiffs' defective definition of the putative class should be rejected, and a definition which accurately and specifically defines the class of persons which the plaintiffs seek to represent should be adopted.

Respectfully submitted,

*s/ Amanda S. Stout*
AMANDA S. STOUT (La. Bar Roll No. 29001)
**McGlinchey Stafford, PLLC**
One American Place, 14th floor
Baton Rouge, Louisiana 70825
Telephone:  (225) 383-9000
Facsimile:  (225) 343-3076
astout@mcglinchey.com

and

STEPHANIE JOHN (La. Bar Roll No. 25111)
**McGlinchey Stafford, PLLC**
1001 McKinney, Suite 1500
Houston, TX  77002
Telephone:  (713) 520-1900
Facsimile:  (713) 520-1025
sjohn@mcglinchey.com

ATTORNEYS FOR DEFENDANT, QUADEL
HOUSING SERVICES, INC.

## CERTIFICATE OF SERVICE

I certify that on this 26th day of August, 2008, a copy of the above and foregoing Memorandum In Opposition to Motion to Certify a Collective Class of Persons "Similarly Situated" Pursuant to 29 U.S.C. § 216(b) by Quadel Housing Services, Inc. was electronically filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.  I further certify a copy of this Opposition will be mailed to all non-CM/ECF participants in this matter.

_s/ Amanda S. Stout_
Amanda S. Stout

298329.2

17