## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LAILA KUPERMAN, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 08-565** |
| **ICF INTERNATIONAL, ET AL.** | **SECTION: "J" (3)** |

### MEMORANDUM IN OPPOSITION TO MOTION TO CERTIFY A COLLECTIVE CLASS OF PERSONS "SIMILARLY SITUATED" PURSUANT TO 29 U.S.C. § 216(b)

MAY IT PLEASE THE COURT:

**I.**     **Introduction**

Defendants, ICF International, Inc., ICF Emergency Management Services, LLC, and ICF Consulting Group, Inc. (erroneously identified in the Complaint as ICF Consulting Group, LLC), oppose the Motion to Certify a Collective Class of Persons "Similarly Situated" Pursuant to 29 U.S.C. § 216(b) filed by Plaintiffs Laila Kuperman, Catherine Lyles, and Jason Ricks. Plaintiffs failed to carry their burden, however light, of establishing that this action should proceed collectively under the FLSA. Plaintiffs own allegations and submissions demonstrate that they are not similarly situated to each other or to the members of their putative collective action group.

Plaintiffs attempt to paint an oversimplified picture of a complex and evolving employment relationship that developed as part of recovery efforts in the wake of Hurricanes Katrina and Rita. Plaintiffs failed to satisfy either of the two standards recognized by the Fifth Circuit for conditional certification of a putative collective action. Conditional certification is by no means automatic, and even when the applicable standard is satisfied, a district court is "'charged with the duty of monitoring its class decisions in light of the evidentiary development of the case. . . . [and] [t]he district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts." *Johnson v. Big Lots Stores, Inc.,* 2008 U.S. Dist. LEXIS 47990 **17-18 (E.D.La. June 20, 2008). (Rec. Doc. 54-2). Where, as here, the assertions and facts on record clearly demonstrate individualized and diversified assertions and facts regarding Plaintiffs' and putative collective action members' employers, jobs and job duties, work experiences, compensation, departments, supervisors, work locations, employers, and claims, and  Defendants' defenses, conditional certification must be denied. To do otherwise would only waste the resources of the Court and the parties, and result in an improper judicially-approved solicitation of non-similarly situated individuals to participate in an action that would be destined for decertification.

## II.     **Background**

### A.     **The Parties**

ICF Emergency Management Services, LLC ("ICF"), manages the Road Home Program, which provides services to qualified individuals whose properties were affected by Hurricanes Katrina and/or Rita. Exhibit 1, Declaration of Scott Morris. ICF International, Inc., is a holding company and does not have any payroll or employees. *Id.* ICF Consulting Group, Inc., is a

wholly-owned subsidiary of ICF International, Inc., and does not have any payroll or employees. *Id.* ICF is a wholly-owned subsidiary of ICF Consulting Group, Inc. "ICF Consulting Group, LLC," if that entity exists, is not related to any of the aforementioned entities. *Id.*

Neither ICF Consulting Group, Inc., nor ICF International, Inc., control or make employment decisions with respect to the employees of ICF. *Id.* Likewise, they do not share labor relations or personnel functions with ICF, the latter of which has its own federal tax and employer identification number. *Id.*

Quadel Housing Services, Inc. ("Quadel"), is a subcontractor to ICF. *Id.* Quadel is not related to ICF or its parents, and is a distinct and separate corporation. *Id.* Neither ICF nor Quadel control or make employment decisions with respect to each other's employees. *Id.* ICF and Quadel have their own human resources functions, and they are not interrelated or shared with one another. *Id.* ICF and Quadel do not have interrelated corporate or business operations. *Id.* ICF and Quadel do not have any joint or centralized control of labor relations. *Id.* Quadel, as a Road Home Program subcontractor, does not hire, discipline, or fire ICF's employees, and ICF does not hire, discipline, or fire Quadel's employees. *Id.* ICF does not accept or take action on employment applications for positions with Quadel. *Id.* ICF and Quadel do not have any common management. *Id.* ICF and Quadel do not have common ownership or financial control. *Id.*

Although there are ten Plaintiffs named and/or joined in this action, the only ones to have ever been employees of ICF are: Toni Jones, Laila Kuperman, Deborah Lamonica, Catherine Lyles, Jason Ricks, and Robert Ruemker. *Id.* Neither they nor any other Plaintiff was ever employed by ICF International, Inc., or ICF Consulting Group, Inc. *Id.* More specifically, ICF

never employed Tieneka L. Johnson, Niaja M. Jackson, La'Kedra Williams, or Elizabeth Groner, and never made any decisions with respect to their employment by any entity. *Id.* ICF never issued any payment or compensation to Tieneka L. Johnson, Niaja M. Jackson, La'Kedra Williams, or Elizabeth Groner. *Id.* ICF never withheld any federal, state, unemployment, or social security taxes on behalf of Tieneka L. Johnson, Niaja M. Jackson, La'Kedra Williams, or Elizabeth Groner because it never issued any paychecks to them. *Id.*

**B.**     **ICF Job Positions for Road Home Program**

ICF has used different job positions for the purpose of managing the Road Home Program. *Id.* Among the positions ICF has used for this program are Housing Advisors, Closing Advisors, Appeals Advisors, Resolution Advisors, and Analysts. *Id.* ICF has not used a position referred to as a Pre-Closing or Post-Closing Advisor. *Id.*

At the inception of the program, the positions of Housing Advisor, Closing Advisor, Appeals Advisor, Resolution Advisor, and Analyst were different and involved different job duties. *Id.* As the program has evolved, some of the duties of the Housing Advisor, Closing Advisor, and Resolution Advisor positions began to overlap. *Id.* While these positions acquired similarity over time, they were not always similar and, in fact, initially involved different job duties. *Id.* Appeals Advisor and Analyst positions have always been different positions with different job duties. *Id.*

ICF initially classified the Housing Advisor job position as exempt from overtime under the Fair Labor Standards Act ("FLSA") based on the good faith belief that it qualified for the administrative exemption based on the duties and authority assigned to the position. (Rec. Doc. 37-1). Housing Advisors, including Ms. Kuperman, used independent judgment and discretion

in identifying and presenting grant options for applicants. *Id.* Housing Advisors, including Ms. Kuperman, used a computer program called eGrant to perform calculations of options for applicants. *Id.*

Housing Advisors, including Ms. Kuperman, were not restricted to scripts from which they could not deviate in performing their jobs. *Id.* While the grant program was subject to certain guidelines, Housing Advisors retained some independent judgment and discretion in interacting with and counseling applicants about the options available to them. *Id.* For example from the beginning of the program in August 2006 until about February 2007 the Housing Advisor was responsible for determining the type of home evaluation to be performed.  *Id.*

Housing Advisors, including Ms. Kuperman, were responsible for interpreting and implementing management and operational policies and practices in carrying out their duties. *Id.* Housing Advisors, including Ms. Kuperman, carried out assignments in the course of conducting ICF's business operations that were financially significant and that had a significant impact on the business. *Id.* For example, during Ms. Kuperman's tenure at ICF, she facilitated grants to applicants in excess of  $8,000,000. *Id.* Housing Advisors, including Ms. Kuperman, assisted in the process of receiving, investigating, and resolving applicant complaints and disputes on behalf of ICF. *Id.*

## C.  **Certain Plaintiffs' Employment at ICF**

In their Complaint, named Plaintiffs generally allege to have held a position categorized as "Intake Personnel" consisting of approximately eight different positions. (Rec. Doc. 1, ¶¶ 1, 23). While Laila Kuperman asserts she held the positions of Housing Advisor and Resolution Advisor (Rec. Doc. 42-5), she never held the position of Analyst at ICF. *Id.* Laila Kuperman was

an acting assistant manager and had supervisory duties during part of her employment at ICF, however. *Id.* Catherine Lyles asserts she held the positions of Housing Advisor or CARS Advisor at ICF. (Rec. Doc. 42-5). However, she never held the position of Closing Advisor, Resolution Advisor, Appeals Advisor, or Analyst at ICF. *Id.* Jason Ricks, who asserts he held the positions of Housing Advisor and Closing Advisor at ICF (Rec. Doc. 42-5), never held the position of Appeals Advisor, Resolution Advisor, or Analyst at ICF. *Id.*

Toni Jones never held the position of Closing Advisor or Analyst at ICF. *Id.* Toni Jones was a team leader and had supervisory duties during part of her employment at ICF. *Id.* Deborah Lamonica never held the position of Resolution Advisor or Analyst at ICF. *Id.* Deborah Lamonica served as an associate and had supervisory duties during part of her employment at ICF. *Id.* Robert Ruemker, a current ICF employee, has never held the position of Closing Advisor or Analyst at ICF. *Id.*

Ms. Kuperman and other ICF employees in advisor and analyst positions recorded all the hours worked on their timesheets while employed by ICF. (Rec. Doc. 37-1). Employees record the hours worked electronically in a computer program called Deltek. *Id.* After recording the hours worked, the program prompts them with the following message: "By signing this timesheet you are certifying that the hours charged were incurred on the project numbers and dates recorded in accordance with ICF International's Employee Handbook on Timekeeping." *Id.* Employees are required to verify the completeness and accuracy of the timesheets by entering a code, which represented her electronic signature. *Id.*

Ms. Kuperman and other ICF employees in advisor and analyst positions received ICF's timekeeping policy and participated in timekeeping training whereby they were instructed to

record every hour she worked and to insure her timesheets were complete and truthful. *Id.* They also were instructed as to the reporting procedure to use if they became aware of any violation of this policy, including the falsification of timesheets or a request or instruction by any supervisor or manager to falsify timesheets. *Id.* While Ms. Kuperman alleges she was prohibited from recording more than 40 hours in a workweek, her own timesheets (like those of other employees) refute her own allegation. *Id.*

**D.    DOL Investigation and Supervised Back Wage Payment and ICF's Cooperation With Same**

On or about March 2007, the U.S. Department of Labor initiated an investigation into the classification of ICF's Housing Advisors under the FLSA.  *Id.*  With the supervision and approval of the U.S. Department of Labor, ICF issued a payment to each Housing Advisors, including Ms. Kuperman, in an amount equal to the sum they would have received for overtime had they been classified as non-exempt.  *Id.* A  DOL Form WH-58 was issued with each back wage payment, and most of the employees signed the forms acknowledging their receipt of the payment and waiver of any FLSA claims as a result.

ICF does not admit or concede that the Housing Advisor job position was at all times non-exempt or that the administrative exemption was inapplicable. *Id.*  However, ICF honored the determination made by the DOL that the exemption did not apply and in response to the determination classified Housing Advisors in accordance therewith in April of 2007. *Id.*

**III.    Plaintiffs Bear the Burden of Proving that Certification of a Collective Action Is Proper**

Section 216(b) of the FLSA permits a collective action only if Plaintiffs can show that they and the members of the proposed class are "similarly situated."  29 U.S.C. § 216(b).  The

FLSA does not define similarly situated. 29 U.S.C. § 216(b). The FLSA also provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id.

Collective actions under § 216(b) are quite different than class actions under Federal Rule of Civil Procedure 23. *See La Chapelle v. Owens-Illinois, Inc.,* 513 F.2d 286, 289 (5th Cir. 1975); *Wyatt v. Pride Offshore, Inc.,* 1996 U.S. Dist. LEXIS 13335, 3 Wage & Hour Cas. 2d (BNA) 892 (E.D.La. 1996) (attached). The most significant difference is that a judgment in a Rule 23 class action is binding on all members of the class unless they expressly "opt out" of the action, while a judgment in a § 216(b) collective action only binds those members who timely file a proper consent to "opt in" to the action. Thus, while it is obviously important that all potential members of a Rule 23 class receive notice of the pending action (so they can exercise their right to opt out if they desire so as not to be bound by the judgment), such notice is less important in § 216(b) collective actions as the potential members retain their legal rights regardless of the pendency, settlement, or judgment in the collective action. *Wyatt,* at *3; Fed. R. Civ. Proc. 23. Thus, the FLSA itself provides no procedure or method for certifying or allowing an action to proceed collectively under § 216(b) or authorization of notice to potential members of the pendency of a collective action.

Courts have cautioned against permitting certification and notice to putative collective action members without adequate factual support for assertions that the plaintiffs and the purported class members are similarly situated and that individualized facts, issues, and claims do not predominate:

> As a matter of sound case management, a court should, before offering such assistance, make a preliminary inquiry as to whether a manageable class exists.

> Moreover, the sending of notice and consent forms to potential plaintiffs implicates concerns in addition to orderly case management. **The courts, as well as practicing attorneys, have a responsibility to avoid the "stirring up" of litigation through unwarranted solicitation**.

*Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266-67 (D.Mn. 1991)(emphasis added); *see also D'Anna v. M/A-Com, Inc.*, 903 F.Supp. 889, 894 (D.Md. 1995); *H&R Block, Ltd. V. Housden*, 286 F.R.D. 399, 401 (E.D.Tx. 1999).

The leading Fifth Circuit case on the collective action certification, *Mooney v. Aramco Services Co.*, 54 F.3d 1207 (5th Cir. 1995), discussed two general approaches that have been used by the courts. At all times, Plaintiffs bear the burden of establishing that they and the proposed class are similarly situated. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001); *Basco v. Wal-Mart Stores Inc.*, 2004 U.S. Dist. Lexis 12441, at *14 (E.D. La. July 2, 2004).

A.      **Fifth Circuit Recognizes Two Approaches to Collective Action Certification**

The first approach acknowledged by the Fifth Circuit involves a two-stage process attributable to *Lusardi v. Xerox Corp.*, 122 F.R.D. 463 (D.N.J. 1988). During the initial stage, the plaintiff must come forward with "substantial allegations that the putative class members were together the victims of **a single decision, policy, or plan infected by discrimination**." *H&R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (quoting *Mooney*, 54 F.3d at 1214 n.8) (emphasis added). If the plaintiff comes forward with substantial allegations, the court "conditionally certifies" the class, grants limited discovery, and permits notice to be sent to putative class members. *Basco*, 2004 U.S. Dist. Lexis 12441, at *9 (quoting *Mooney*, 54 F.3d at 1214). Then, during the second stage, the court decides based on the facts produced in discovery whether the conditionally certified class should be decertified. *Id.*

The second approach, attributable to *Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo. 1990), involves a single-stage analysis of the four factors typically considered in certifying Rule 23 class actions.   Under this approach, "the court looks at 'numerosity,' 'commonality,' 'typicality' and 'adequacy of representation' to determine whether a class should be certified."   *Mooney*, 54 F.3d at 1214.   Under the *Shushan* approach, the only material difference between FLSA collective actions and Rule 23 class actions is that class members must "opt in" to FLSA actions, while class members must "opt out" of Rule 23 class actions.  *See* 29 U.S.C. § 216(b) (requiring written consent to become an FLSA class member).

The *Mooney* court did not adopt or approve of either the *Lusardi* or *Shushan* approaches because the plaintiff could not establish the appropriateness of certification under either approach.   *Mooney*, 54 F.3d at 1216.   Although many courts since *Mooney* have applied the *Lusardi* approach, *see, e.g.*, *Basco*, 2004 U.S. Dist. LEXIS 12441, at *13, acceptance of that approach has not been entirely uniform, and the Fifth Circuit has yet to expressly favor one approach over the other. *See Camp v. Lockheed Martin Corp.*, 1998 WL 906915, at *2 (S.D. Tex. Apr. 23, 1998) (finding "more persuasive the reasoning of the District of Colorado" in *Shushan*); Fraser, *Opt-in Class Actions Under the FLSA, EPA, and ADEA: What Does it Mean to be "Similarly Situated"?*, 38 Suffolk U. L. Rev. 95, 122 (2004) ("When courts are faced with the question of whether plaintiffs are similarly situated, they should answer the question by applying the standards of Rule 23.").

## B.     Conditional Certification Under *Lusardi* Is Far from Automatic

Plaintiffs appear to assume that the *Lusardi* approach will apply based on a prior decision of this Court and regardless of the Fifth Circuit's silence thus far as to which, if any,

approach is preferable. ICF acknowledges that a majority of courts in the Fifth Circuit, including this Court, apply the *Lusardi* approach and analyzes the case under that standard accordingly.

Under *Lusardi, w*hile the initial determination of whether to certify the class is made "using a fairly lenient standard," by no means is conditional certification automatic. *Mooney*, 54 F.3d at 1214. "The court must be satisfied that there is a basis to conclude that **questions common to a potential group of plaintiffs would predominate a determination of the merits in this case**." *Torres v. CSK Auto, Inc.*, 2003 U.S. Dist. LEXIS 25092 (W.D. Tex. 2003) (emphasis added). Plaintiffs cannot rely on non-specific or conclusory allegations to make this showing; there must be a factual basis to justify certification even at this stage of the proceedings and common, rather than individualized, questions must predominate. *Id.* at *8.

"Although the standard for satisfying the first step is lenient, the court still requires at least *substantial allegations* that the putative class members were together the victims of a single decision, policy, or plan infected by" unlawful conduct. *H&R Block*, 186 F.R.D. at 400 (emphasis added; citations and internal quotation marks omitted). Affidavits that contain mere "conclusory allegations" are not sufficient to meet this initial burden. *Id.* Likewise, "unsupported assertions of wide-spread FLSA violations, such as the ones made here, [do] not satisfy the movant's 216(b) burden." *Id.* (citing *Haynes v. Singer Co.*, 696 F.2d 884 (11th Cir. 1983)) (emphasis added); s*ee, e.g.*, *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 506 (M.D. La. 2005).

When plaintiffs have failed to come forward with such substantial allegations, district courts in the Fifth Circuit have not hesitated to deny motions to conditionally certify FLSA actions. *See, e.g.*, *England*, 370 F. Supp. 2d at 511 (rejecting conditional certification of a class

that included "a multitude of different managers at different geographical locations"); *Basco*, 2004 U.S. Dist. Lexis 12441, at *22 (rejecting conditional certification of a class because plaintiffs "failed in their burden of proof to demonstrate identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency"); *H&R Block*, 186 F.R.D. at 400 (rejecting conditional certification of a class where "[a]ll movants have done is submit affidavits making conclusory allegations"); *see also Dybach v. Dept of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991) (a plaintiff in an FLSA case must "proffer evidence" that other employees exist that are similarly situated); *Haynes v. Singer Co.*, 696 F.2d 884, 885, 887, n.1 (11th Cir. 1983) (the trial court properly declined to issue notice to a proposed class of "all past and present employees of Singer in the State of Florida" who worked overtime without overtime compensation, absent affirmative evidence that they were similarly situated); *Stone v. First Union Corp.*, 203 F.R.D. 532, 542 (S.D. Fla. 2001) (a showing that each proposed class member in an ADEA case is age forty or over and suffered an adverse employment action is not sufficient to justify a collective action).

**IV.** **Plaintiffs Failed to Carry Their Burden of Proving Conditional Certification Is Appropriate—Assertions and Facts Reflect that Individualized Questions Predominate and Plaintiffs Are Not Similarly Situated With Each Other or Potential Plaintiffs**

    **A.** **Plaintiffs Had Different Employers, Which Precludes Certification**

The most glaring problem with certification, and strongest evidence that Plaintiffs are not similarly situated, is that at least three different entities employed Plaintiffs, making certification impossible. Plaintiff Elizabeth Groner apparently did not work for any named Defendant, yet she seeks to be part of a collective action against companies for which she never worked and that could not possibly have violated any of her rights. (Rec. Doc. 54-1); Exhibit 1, Declaration of

Scott Morris. Plaintiffs have failed to present any legal authority, much less any substantial factual allegations or basis, for allowing the certification of a collective action against an employer by an individual it never employed.

Of the ten Plaintiffs in this case, only six of them ever worked for ICF: Plaintiffs Jones, Kuperman, Lamonica, Lyles, Ricks, and Ruemker. Exhibit 1, Declaration of Scott Morris. The remaining Plaintiffs never worked for ICF. *Id.* As the other Plaintiffs, and other putative collective action members never worked for ICF, they could not possibly have any claim against ICF. No rule of law, fairness, or justice permits a class of individuals who have no claim against another party to subject that party to the disruption and expense of collective action litigation. ICF should not be required to spend its resources and money participating in written discovery, depositions, and litigation with respect to wage and hour claims by individuals it never employed or paid.

Quadel and ICF have presented overwhelming and irrefutable evidence that they are unrelated, have no common management or labor relations, and have no involvement in employment decisions for one another. *Id.* Quadel is not related to ICF or its parents, and is a distinct and separate corporation. *Id.* Neither ICF nor Quadel control or make employment decisions with respect to each other's employees. *Id.* ICF and Quadel have their own human resources functions, and they are not interrelated or shared with one another. *Id.* ICF and Quadel do not have interrelated corporate or business operations. *Id.* ICF and Quadel do not have any joint or centralized control of labor relations. *Id.* Quadel, as a Road Home Program subcontractor, does not hire, discipline, or fire ICF's employees, and ICF does not hire, discipline, or fire Quadel's employees. *Id.* ICF does not accept or take action on employment

applications for positions with Quadel. *Id.* ICF and Quadel do not have any common management. *Id.* ICF and Quadel do not have common ownership or financial control. *Id.*

Under these circumstances, any Plaintiff who worked for Quadel is not as a matter of law similarly situated to a Plaintiff who worked for ICF (or a Plaintiff, such as Groner, who apparently worked for neither) such that their claims cannot proceed collectively. *Id. Basco*, 2004 U.S. Dist. Lexis 12441, at *22 (rejecting conditional certification of a class because plaintiffs "failed in their burden of proof to demonstrate identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency"). As Quadel and ICF have separate operations, human resources functions, employees, and policies and practices, the proposed class of Plaintiffs' allegations preclude any finding that they were together the victims of a single decision, policy, or plan infected by unlawful conduct.

## B.    Plaintiffs Who Worked for ICF Held Diverse Jobs and Performed Diverse Job Functions

The six Plaintiffs who actually worked for ICF held such varied positions that their claims would necessarily require individualized discovery and adjudication. For example, each of the six Plaintiffs held multiple positions with ICF, but no two held exactly the same combination of positions and the evidence reflects that each position was, in fact, different. Exhibit 1, Declaration of Scott Morris. While some of the positions developed overlapping duties as the Road Home Program evolved, other positions remained distinctly different. *Id.* And, those positions that developed some overlap did not overlap with the other positions. *Id.*

Plaintiffs' allegations and proposed class definition include jobs that do not exist at ICF. ICF used different job positions for the purpose of managing the Road Home Program, including Housing Advisors, Closing Advisors, Appeals Advisors, Resolution Advisors, and Analysts. *Id.*

However, ICF has not used a position referred to as a Pre-Closing or Post-Closing Advisor. *Id.* While these may be positions held by another Defendant or another employer, they were not positions at ICF and, thus, cannot serve as the basis of a certification decision or class definition.

ICF's exemption-based defenses also are not susceptible of collective treatment, even conditionally. For instance, several of the Plaintiffs actually held management or supervisory positions during their employment at ICF, while others did not. Both the executive and administrative exemptions will be issues based on the varied nature of the positions, duties, and authority held by each Plaintiff in each specific job. This is precisely the scenario faced in *Johnson v. Big Lots*, 2008 U.S. Dist LEXIS 47990, albeit at the decertification stage, in which the court ultimately concluded with respect to a group of assistant store managers (only one position at issue) that "[t]he extent to which opt-in plaintiffs' work experiences differ directly influences . . . [the employer's] capacity to prove its statutory exemption defense." *Id.,* 2008 U.S. Dist LEXIS 47990 at *24. The dissimilarity of Plaintiffs' job duties will impact ICF's ability to pursue its statutory exemption defenses on a collective basis. *Id.*

The only effort made by named Plaintiffs to carry their burden of showing they are similarly situated to each other and putative collective action members is their conclusory affidavit testimony that unidentified individuals with unspecified job duties were similar to their own. (Rec. Doc. 42-5, Exhibits D and E). *H&R Block*, 186 F.R.D. at 400 (rejecting conditional certification of a class where "[a]ll movants have done is submit affidavits making conclusory allegations"). This is insufficient for several reasons. First, the allegations are vague and conclusory, and as a matter of law do not justify conditional certification. Second, Plaintiffs held various positions, but not all of the positions listed in the proposed class definition in their

Complaint. Thus, their assertion is inadequate to support certification or a class definition as proposed. Third, these Plaintiffs have failed to provide any information about which of the thirteen Road Home Program locations they worked at (Rec. Doc. 54-1), much less the positions they and others held at each location, their supervisors, their compensation, their classification (exempt or non-exempt), or any other information from which this Court could conclude that they are similarly situated with any other employee of ICF.

The case of *Horne v. United Services Automobile Ass'n*, 279 F.Supp.2d 1231 (M.D.Ala. 2003), is instructive. *Horne* involved allegations by an insurance appraiser that his employer failed to compensate him and others similarly situated for overtime. The plaintiff specifically alleged that he was told that he would not be paid for overtime and was forced to clock out at 5:00 p.m. each day by his supervisor even though his job required that he work more than forty hours a week. The issue before the court was whether the plaintiff was able to make a showing that other appraisers were similarly situated to the plaintiff. In making the determination, the court noted that

> A plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions, because without such a requirement, it is doubtful that §216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse.

*Id.*, 279 F.Supp.2d at 1234 (citing *White v. Osmose*, 204 F.Supp.2d 1309 (M.D.Ala. 2002)). The court concluded that the plaintiff's allegations could be unique to himself and not applicable to other appraisers. Specifically, the court also noted that the supervisor denied ever telling the plaintiff he had to clock out by 5:00 p.m. Without any other evidence that other employees were

subjected to the same practice, the plaintiff could not show that other employees were similarly situated to him in this respect.

### C.   Different Employers, Policies, and Positions Undermine Any Conclusory Allegation of a Single Decision, Policy, or Plan Infected by Discrimination

For the same reasons explained above, Plaintiffs have failed to present "substantial allegations that the putative class members were together the victims of **a single decision, policy, or plan infected by discrimination**." *H&R Block*, 186 F.R.D. at 400 (relying on *Mooney*, 54 F.3d at 1214 n.8) (emphasis added). In fact, the assertions and facts demonstrate that Plaintiffs' work experiences, various jobs, and claims result from individualized decisions, policies, or plans. Plaintiffs' different jobs for different employers preclude a finding otherwise.

In fact, the diversity in Plaintiffs' claims further supports this conclusion. Some of the Plaintiffs contend they were instructed to work off-the-clock by unspecified supervisors and contrary to the clear and uniform policy of ICF that Plaintiffs accurately record their time and report any irregularities or problems to Human Resources or otherwise at ICF. (Rec. Doc. 37-1). Not all of the Plaintiffs assert this claim, and as alleged it relates to the actions of one or a few unidentified supervisors, not a single decision, policy, or plan. Further, Plaintiffs' misclassification claims apparently relate to at least five different positions and, thus, could not be the result of a single decision, policy, or plan. (Rec. Doc. 1, § 1).

Similarly, in *Sheffield v. Orius Corp.*, a group of plaintiffs moved to certify a collective action under Section 216(b). 211 F.R.D. 411 (D.Or. 2002). The plaintiffs sought to certify a class consisting of "employees of defendant who worked in excess of 40 hours per week and were not paid at a rate of 1 1/2 times their regular rate of pay for those hours worked in excess of 40 hours per week." *Id.* at 412. They also sought relief for employees who were paid at a

rate below the minimum wage.  The proposed class included linemen, splicers, crew foremen,

laborers and other equivalent positions.  The district court refused to conditionally certify the

class holding:

> The Magistrate Judge correctly noted that there are factual differences among the
> putative class members.  The class members have been employed by different
> subsidiaries and affiliates of defendant Orius Corp.  The class members held
> different job titles, enjoyed different payment structures (piece-rate, hourly, and
> salaried), and worked at nine different job sites.  Thus, the dissimilarities among
> the putative class members extend to geography, work sites, and payment
> systems.  ***  Plaintiffs have failed to offer sufficient evidence to establish that
> the putative class members were commonly affected by a uniform plan or scheme
> to deny workers overtime compensation and minimum wages.

211 F.R.D. at 413.  The court went on to hold that **"a collective action certified on the facts**

**presented thus far would be mired in particularized determinations of liability and**

**damages, rather than collective consideration of common questions of law and fact."**  *Id.*

(emphasis added).  Here, the proposed class holds different job titles, with different pay rates,

different work locations, different supervisors, and giving rise to different claims and defenses,

making certification improper.

  **D.**  **ICF's Parent Companies Are Not FLSA "Employers" And Cannot Be an**
     **FLSA Defendant, Much Less Collective Action Defendants**

  As discussed above, the record evidence is overwhelming that ICF's parents, holding

companies with no employees or payroll and that provide no labor relations functions to ICF, are

not proper parties to this action and, thus, cannot be the subject of a collective action by the

Plaintiffs and putative collective action members. In fact, Plaintiffs submitted to the Court an

excerpt from the Compliance Action Report ("Report") prepared by the Wage & Hour Division

of the U.S. Department of Labor in connection with its investigation of the FLSA classification

of Housing Advisors at ICF that actually supports ICF's position for several reasons.[1] The Report identifies the "Legal Name" of the employer under "Employer Information" as "ICF Emergency Management Services." (Rec. Doc. 33-4, p. 3.) The Report then identifies "ICF International" as a "Trade Name," rather than the legal name of the employer. *Id.* The Report identifies the "Subject of Investigation" as "ICF Emergency Management Services, L.L.C." and the name "ICF Emergency Management Services, LLC" appears at the top of each page of the Report. (Rec. Doc. 33-4, pp. 5-9.)

Use of the trade name "ICF International" on letters and other documents used by ICF do not make ICF International, Inc., the employer of ICF's employees. (Rec. Doc. 33, p. 1, n. 1.) Courts have routinely recognized that a subsidiary's use of a parent corporation's forms, handbooks, applications, and other personnel-related documents "does not evince the kind of extreme control by a parent corporation over the operations of its subsidiaries so as to render it and its subsidiary a single employer." *Torres v. Liberto Manufacturing Co.*, 2002 U.S. Dist. LEXIS 14694, *15-16 (N.D. Tex. 2002) (citing *Bell v. UPS*, 2000 U.S. Dist. LEXIS 3296 (N.D. Tex. 2000) (holding that where a parent company publishes a handbook for its subsidiary, the parent will not be considered a single employer with the subsidiary absent evidence that the parent exercises control over the subsidiary's employee); *see also Kirshner v. First Data Corp.*, 2000 U.S. Dist. LEXIS 17519 (N.D. Tex. 2000) (holding that a subsidiary's use of the parent's

---

[1] There is no indication that the DOL considered or decided the issue of whether multiple entities constitute a single employer. Indeed, the documents submitted by Plaintiff Kuperman show that the DOL conducted separate investigations with respect to ICF Emergency Management Services, Inc., and Quadel Housing Services, Inc. (Rec. Doc. 33-4 and 33-5.) The Report does not indicate the source of the information relied upon by Plaintiffs, and does not even mention ICF Consulting Group, Inc. It also does not refer to ICF International, Inc., but instead refers only to "ICF International" as a "Trade Name." (Rec. Doc. 33-4, p. 3.)

employment application forms, benefit forms, and severance packages does not create a single employer relationship). Plaintiff Kuperman has failed to present any evidence that she was employed by any entity other than ICF Emergency Management Services, Inc., or that it forms a single employer with any other entity, for the purpose of certification or any other purpose in this lawsuit. Thus, certification of any collective action against ICF's parents must be denied.

"substantial allegations that the putative class members were together the victims of **a single decision, policy, or plan infected by discrimination**." *H&R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (quoting *Mooney*, 54 F.3d at 1214 n.8) (emphasis added).

## V.     Plaintiffs' Proposed Collective Action Group Definition Is Hopelessly Flawed

This case is one in which conditional certification is precluded by the assertions and facts even under the lighter burden at the first stage of the *Lusardi* analysis. Likewise, their proposed class definition is equally defective and must be rejected. For the reasons stated above, a class that includes multiple, separate employers, covers various jobs and job duties, is subject to multiple exemption defenses, consists of claims by employees of no less than three different companies, and includes defendants who never employed any plaintiff or class member does not satisfy the similarly situated requirement of Section 216(b).[2] If this Court certifies any class over Defendants' objection, ICF submits that to comply with Section 216(b) any conditionally certified class must include a single job and a single employer.

---

[2] As noted by Quadel in its opposition, Plaintiffs' proposed definition fails to account for the fact that the DOL determined that ICF was entitled to calculate overtime according to the fluctuating workweek method, not the time-and-a-half method. Thus, to the extent their proposed definition is based on the time-and-a-half method, it is contrary to the facts. (Rec. Doc. 42-3, PF0006).

**VI.**     <u>**Conclusion**</u>

For the reasons set forth above, conditional certification should be denied and Plaintiffs should proceed with their claims against their respective current and/or former employers individually.

Respectfully submitted,

**JONES, WALKER, WAECHTER,
POITEVENT, CARRÈRE & DENÈGRE, L.L.P.**

<u>/s/ Jennifer L. Anderson</u>
Jennifer L. Anderson (La. #23620)
Kevin O. Ainsworth (La. #26777)
8555 United Plaza Blvd.
Four United Plaza
Baton Rouge, LA 70809
Telephone: (225) 248-2000
Facsimile: (225) 248-2012
janderson@joneswalker.com
kainsworth@joneswalker.com

*and*

Pauline Hardin, T.A. (La. #6542)
201 St. Charles Ave., 51st Floor
New Orleans, LA 70170
Telephone: (504) 582-8000
Facsimile: (504) 589-8150
phardin@joneswalker.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2008, a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be served on the following by operation of the Court's electronic filing system:

Jonathan M. Herman
Middleberg, Riddle & Gianna
717 North Harwood, Suite 2400
Dallas, TX 75201
jherman@midrid.com


John D. Person
Middleberg, Riddle & Gianna
201 St. Charles Avenue, 31st Floor
New Orleans, LA 70170
jperson@midrid.com

Amanda S. Stout
McGlinchey Stafford, PLLC
14th Floor, One American Place
Baton Rouge, LA 70825
astout@mcglinchey.com


and by U. S. Mail to:


Lori P. Moser
Middleberg, Riddle & Gianna
Bank One Centre, North Tower
450 Laurel Street, Suite 1101
Baton Rouge, LA 70801


/s/ Jennifer L. Anderson
Jennifer L. Anderson