UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LAILA KUPERMAN                                    CIVIL ACTION

VERSUS                                            NO: 08-565

ICF INTERNATIONAL ET AL                           SECTION: J(3)

<u>ORDER AND REASONS</u>

Before the Court is Plaintiffs' **Motion to Certify a
Collective Class of Persons Similarly Situated Pursuant to 29
U.S.C. 216(b)** of the Fair Labor Standards Act ("FLSA") **(Rec. Doc.
42).**  The putative collective claims are based on alleged
nonpayment of overtime by the defendant companies.

<u>PROCEDURAL HISTORY AND BACKGROUND FACTS</u>

Plaintiffs Laila Kuperman and Jason Ricks are former
employees of ICF Emergency Services, LLC, ("ICFES"), and
plaintiff Catherine Lyles was an employee of QHS Housing
Services, Inc. ("QHS") and allegedly ICFES.  ICFES was the
contractor selected by the state of Louisiana to administer the
state's Road Home Program after Hurricane Katrina.  QHS was a
subcontractor to ICFES charged with housing assistance under the
umbrella of the Road Home Program.

Plaintiffs allege that they were employed as "Housing
Advisors" and "Analysts" by QHS and ICFES, during the period from
August 2006 through March 2007.  As Housing Advisors, Plaintiffs
allegedly followed scripts describing Road Home options to

applicants.  QHS and ICFES initially classified the "Housing Advisor" position as exempt under the overtime provisions of the Fair Labor Standards Act ("FLSA"), but an audit begun in March 2007 by the Department of Labor ("DOL") determined that these positions were non-exempt and that Housing Advisors should have been paid overtime.  As a result of the DOL audit, QHS and ICFES reclassified the Housing Advisor position as nonexempt from the FLSA overtime provisions, but also created a new "Analyst" position that was classified as exempt despite the alleged fact that the duties of this position were virtually identical to those of the housing advisor position.  Eventually, the Analyst position was also reclassified as non-exempt.

Plaintiffs filed this suit in January of 2008 to recover overtime pay owed to employees in the Closing, Appeals, and Resolutions Department ("C.A.R.s Department") by QHS, ICFES, and other ICF entities, alleging that they were entitled to overtime that had improperly been withheld based on the defendants' erroneous classification of their positions.  In their complaint, Plaintiffs allege that the C.A.R.S. Department consisted of Housing Advisors, Closing Advisors (pre- and post-closing), Appeals Advisors, Resolution Advisors, and Analysts.

Beginning in Fall of 2006, QHS employed Housing Advisors in the C.A.R.s Department of its Goodwood and Anselmo locations in Baton Rouge to handle pre- and post-closing as well as appeal

processes under the Road Home Program.  Some Housing Advisors worked exclusively on one type of process, while others worked on all three, but all were considered exempt from the FLSA overtime provisions.  In June of 2007 after the DOL investigation had begun, the QHS C.A.R.s Department de-consolidated into several teams (Pre-closing, Resolutions, Post-Closing, Appeals, and Customer Service), all of which were non-exempt.  However, QHS also employed Appeals Analysts, who were improperly classified as exempt.  QHS eventually paid both the Housing Advisors and the Appeals Analysts overtime back-pay calculated pursuant to a DOL-monitored settlement.

ICFES also utilized various job titles in its operations under the Road Home Program, including Housing Advisor, Closing Advisor, Appeals Advisor, Resolution Advisor, and Analyst.  These positions were initially intended to be discrete amongst themselves, but eventually acquired similarities.  Like QHS, ICFES also classified its various Housing Advisor positions as exempt from the FLSA overtime requirements.  ICFES alleges that although Housing Advisors were not initially paid overtime, they were compensated for their overtime after the DOL audit.  Furthermore, ICFES alleges that all its employees were consistently instructed to record *all hours worked* on time sheets in an electronic timekeeping system.

Plaintiffs also sued ICF International, Inc. ("ICFI") and

ICF Consulting Group, Inc. ("ICFCG") in connection with their FLSA collective class action.  However, these defendants claim that they are merely holding companies which have no control over the employment decisions of ICFES, Plaintiffs' actual employer.

Although QHS and ICFES eventually proffered back wages to Plaintiffs under a DOL-supervised settlement, Plaintiffs question the amount based on the fact that QHS and ICFES supervisors allegedly instructed housing advisors not to record weekly hours worked beyond forty.  Accordingly, Plaintiffs seek certification of a collective class consisting of "Housing Advisors, Analysts, and similarly styled positions" under FLSA to collect overtime wages that were never clocked due to the defendants' alleged policy of requiring only 40 hours per week.

**THE PARTIES' ARGUMENTS:**

In support of their motion to certify a collective class for collection of unpaid overtime under 29 U.S.C. §216(b) of the FLSA, Plaintiffs allege that the Housing Advisor and Analyst positions, as well as other positions in the C.A.R.s Department, were "similarly situated" under §216(b) to allow for initial certification and notice of a collective class.  Specifically, Plaintiffs assert that Housing Advisors, Analysts, and similarly titled positions (i.e. the various advisor positions in the C.A.R.s Department) for ICFES and QHS shared similar

4

responsibilities and duties.  These duties consisted of conducting personal meetings to explain and recommend Road Home options to applicants, completing preliminary and final calculations of options for presentation to applicants, and advising applicants of participation requirements.  Plaintiffs have produced affidavits stating that persons in similar positions performed similar duties.  Plaintiffs have also produced a memorandum and several emails, verified by affidavit, in which various supervisors instructed Plaintiffs that they were expected to work overtime.  None of these documents indicates specifically whether they originated from QHS or ICFES, but they do show generally that they were related to participation in the Road Home Program.  Additionally, the named Plaintiffs have produced sworn affidavits attesting to the fact that they were instructed to only clock 40 hours per week regardless of the hours they actually worked, all while they were improperly exempted from the FLSA's overtime provisions.

Finally, Plaintiffs have produced the DOL audit reports, which found that ICFES and QHS violated FLSA overtime provisions as to "Housing Advisors" from August 1, 2006 through March 31, 2007.  These reports indicate that "Housing Advisors" in 13 locations, which were the same in both the ICFES and QHS audits, were not properly classified as exempt under the FLSA.  The ICFES audit specifically states that "housing advisors and persons

occupying similar positions" were incorrectly classified.
Finally, Plaintiffs note that both ICFES and QHS admit in their
pleadings that the various advisor positions were not distinct
and shared overlapping responsibilities.  See Def. QHS Memo Opp.,
3; Def. ICFES Memo Opp., 4.

Accordingly, Plaintiffs seek certification of the following
defined class:

> all current and former salaried employees of ICF
> International, ICF Consulting Group, L.L.C., ICF Emergency
> Services, Inc. (collectively "ICF") and QHS Housing
> Services, Inc. ("QHS"), who a) occupied the position(s) of
> Housing Advisor, Analyst, or any similar position in
> support of ICF's role in administering the Louisiana Road
> Home Program, along with that of its subcontractor QHS; b)
> were initially classified as "administratively exempt"
> under 29 U.S.C. § 213(a)(1) by ICF or QHS; and c) and who
> worked more than 40 hours each week without being paid time
> and a half for the hours worked over 40 per week.

Pls. Mot. To Certify, 1.

In opposition, ICFES and the other ICF defendants assert
various reasons why collective class certification is not
appropriate.  First, ICFI and ICFCG argue that they are mere
holding companies with no employees or payroll, and thus had no
control over the decisions relevant to Plaintiffs' claims.  These
two defendants point to the DOL audit report submitted by
Plaintiffs, which shows that ICFI is merely a "Trade Name."
Additionally, ICFES argues that it is a completely separate
entity from QHS, and thus a collective class including employees
of both entities is not appropriate.  As to the named Plaintiffs

6

who did in fact work for ICFES, ICFES argues that these employees filled out electronic time sheets that always included a pre-finalization certification that the hours entered were accurate and compliant with ICFES policies, which require entry of all time worked.

Furthermore, ICFES argues that collective class certification is impossible given that the named Plaintiffs worked for three distinct entities, and some of the Plaintiffs only worked for one or the other of the three.  As such, ICFES argues that there is no possible legal authority to allow a collective action that includes claims by employees against employers for whom they never worked.  Accordingly, because ICFES and QHS do not share departments, operations, payroll, human relations policies, or any other operational links, a collective class action under FLSA is inappropriate.

In addition, ICFES argues that the Plaintiffs it did employ did not share sufficiently related job responsibilities to meet the "similarly situated" requirement of §216(b).  Specifically, ICFES argues that while they may have shared similar job titles, the Plaintiffs worked in geographically different locations and in varying levels of authority, and also had different pay rates and supervisors.  ICFES argues further that the only evidence Plaintiffs have produced on the issue of whether they were "similarly situated" consists of conclusory affidavits.  As such,

ICFES argues that collective class certification is inappropriate because Plaintiffs have not presented proof that they were "similarly situated," and thus individual, particularized determinations will be necessary to determine each Plaintiff's claim.

QHS similarly opposes Plaintiffs' motion to certify a collective class, arguing that Plaintiffs have failed to show evidence of a common scheme or plan that violated the FLSA. Specifically, QHS notes that Plaintiffs worked in different locations under different managers and supervisors, and thus have not alleged a discrete unitary plan to withhold their overtime pay.  Also, like ICFES, QHS argues that it is an entirely separate entity from ICFES, and thus cannot be included in a collective class action with employees of ICFES to whom it never had any relationship whatsoever.  Also, QHS argues that despite their similar job titles, Plaintiffs have not shown that they performed "identical tasks" and therefore cannot meet the "similarly situated" requirement under §216(b).  Also, QHS argues that the inherent nature of their claims, namely the amount of time worked, is too individualized to allow collective adjudication.

Alternatively, QHS argues for a more limited class definition than that proposed by Plaintiffs.  First, QHS seeks a more specific description of the potential plaintiffs beyond the

vague "any similar position" language in subsection (a) of the proposed class definition.  Additionally, QHS seeks a revision of subsection (c) of Plaintiffs' proposed class definition to include a more general reference to the FLSA's overtime provisions instead of the specific reference to the time-and-a-half calculation method.  Finally, QHS argues that the class definition should be amended to exclude Plaintiffs who filed WH-58 forms pursuant to the DOL supervised settlement, which would have constituted a waiver of any FLSA claims beyond the amount of the accepted settlement.

In reply, Plaintiffs argue generally that their allegations are sufficient to meet the requirements for a preliminary collective class certification.  Also, while Plaintiffs agree to the proposed change to class definition in subsection (c), they dispute QHS's other proposed changes.  First, as to the "any similar position" language, Plaintiffs argue that this broad and general description is appropriate at this stage of the litigation because there may be other unknown job titles that share the same duties as the ones specifically enumerated.  Second, as to the WH-58 form waivers, Plaintiffs concede that some Plaintiffs may have waived claims for a specific time period and position as reflected in the form, but may thereafter have taken an improperly exempted position for which they did not waive their right to recover overtime.

**DISCUSSION**

**A.  Collective Actions under 29 U.S.C. §216(b)**

Section 207 of the FLSA provides the mandatory parameters for overtime pay.  29 U.S.C. §207.  If an employer does not comply with the provisions of Section 207, the FLSA establishes that an "action to recover the liability prescribed in [§207] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees **similarly situated**."  29 U.S.C. §216(b).

The Fifth Circuit has recognized two different frameworks for determining whether a group of employees are sufficiently "similarly situated" to maintain a collective action under §216(b).  Mooney v. Aramco Svcs. Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995).  The Fifth Circuit has never determined which if either test is exclusively applicable.[1]  However, as this Court has previously used the test set forth in Lusardi v. Xerox Corp., 122 F.R.D. 463 (D.N.J. 1988), and because the parties

_____

[1] The Fifth Circuit has also recognized the approach utilized by the court in Shushan v. Univ. of Co., 132 F.R.D. 263 (D. Colo. 1990).  The Shushan framework treats the §216(b) "similarly situated" collective action under the Rule 23 class action factors: numerosity, commonality, typicality, and adequacy of representation.  Mooney, 54 F.3d at 1214.  The distinguishing factor of a §216(b) collective action as opposed to a Rule 23 class action is that members of the collective action must *opt-in*, whereas class members must *opt-out*.  Id

10

agree that <u>Lusardi</u> is appropriate, the Court will utilize the
<u>Lusardi</u> two-step approach.  See <u>Donohue v. Francis Svcs., Inc.</u>,
2004 WL 1161366 (E.D. La. 2004).

Under the two-step <u>Lusardi</u> test, the first step is the
"notice stage," during which a court determines whether to give
notice to similarly situated employees of a potential collective
action, "usually based on the pleadings and any affidavits."
<u>Mooney</u>, 54 F.3d at 1213-14.  Because the court has relatively
little information at the "notice stage," the determination is
made under a "fairly lenient standard and typically results in
'conditional certification' of a representative class."  <u>Id</u>. at
1214.  However, although the standard is lenient, "it is by no
means automatic."  <u>Lima v. International Catastrophe Solutions,
Inc.</u>, 493 F. Supp. 2d 793, 798 (E.D. La. 2007).

To determine whether the potential group of employees is
"similarly situated," the <u>Lusardi</u> test applies a three-factor
test: "(1) the extent to which the employment settings of
employees are similar or disparate; (2) the extent to which any
defenses that an employer might have to overtime or mis-
classification claims are common or individuated; and (3) general
fairness and procedural considerations."  <u>Johnson v. Big Lots
Stores, Inc.</u>, 561 F. Supp.2d 567, 573 (E.D. La. 2008).  Step two
of the <u>Lusardi</u> analysis is usually triggered by a motion for
decertification, and if the court finds the plaintiffs to be

11

"similarly situated," the case proceeds as a collective action;
if not, the named plaintiffs' case proceeds and the opt-in
plaintiffs' cases are dismissed without prejudice.  Mooney, 54
F.3d at 1214.

In the end, "§216(b) of the FLSA does not require that
plaintiffs be identical," but the "similarly situated" analysis
is nonetheless "highly fact-intensive." Big Lots Stores, Inc.,
561 F. Supp. 2d at 573.  Further, "[a]lthough the standard for
satisfying the first step is lenient . . . the court still
requires at least substantial allegations that the putative class
members were together the victims of a single decision, policy,
or plan infected by discrimination." H & R Block, Ltd. v.
Housden, 186 F.R.D. 399, 400 (E.D. Tex., 1999) (citing Mooney, 54
F.3d at 1214 n. 8) (internal quotations and citations omitted).
Courts determining whether plaintiffs have submitted substantial
allegations of a single plan have looked to "whether potential
plaintiffs were identified . . . whether affidavits of potential
plaintiffs were submitted . . . and whether evidence of a
widespread discriminatory plan was submitted." Id. at 400.

Courts have considered a large array of highly specific
factors in certifying §216(b) collective actions.  Given the fact
intensive nature of the first step of the Lusardi approach, the
Court will address each of the defendants' reasons for denying
certification in the context of the §216(b) jurisprudence.

12

First the various defendants assert that a §216(b) collective action is inappropriate at this stage because the defendants are all separate entities who did not share employees, departments, operations, payroll, human relations policies, or any other operational links.  However, the court in <u>Bernal v. Vankar Enterprise, Inc.</u> held that three separate and unrelated entities could be properly sued as defendants at the preliminary "notification stage" of a §216(b) collective action.  2008 WL 791963, *3-4 (W.D. Tex.).  In addition, to the extent that QHS was a subcontractor of any or all of the ICF entities, the <u>Lima</u> case provides precedent for certifying a collective action against both the general and the subcontractors when all were involved in the same "scheme or practice" that led to the plaintiffs' causes of action.  493 F. Supp. 2d at 799-800.  In <u>Lima</u>, despite the fact that the plaintiffs only provided affidavits regarding one subcontractor employer, the court found it "appropriate to certify the collective action . . . and revisit the question later after some discovery" as to whether a common plan existed among the general and subcontractors to withhold overtime pay.  <u>Id</u>.  As such, ICFES's reliance on the declaration of its Human Resources Director Scott Morris is insufficient at this stage to preclude a preliminary certification.  See ICF Defs. Memo Opp., Ex. 1.  More discovery is needed in this case to determine which defendants may have

participated as employers in a broad policy of intentionally instructing employees not to clock overtime hours.

Next, ICFI and ICFCG argue that the collective action should not proceed against them because they are merely holding companies for ICFES without any direct role in the daily operations or employee policies of ICFES.  However, Plaintiffs have presented record evidence that there may be some more significant relationship among the three ICF entities, notwithstanding the lack of any meaningful discovery in this case.  Specifically, Plaintiffs describe various email and documentary correspondence that indicates some relationship among the three ICF defendants.  In addition, even if ICFCG and ICFI are determined not to be employers for purposes of a §216(b) action, those entities can file a motion to dismiss after further discovery.

Further, both the ICF entities and QHS argue that Plaintiffs were not "similarly situated" because their jobs entailed different and distinct responsibilities, with different managers and supervisors, in different geographical locations.  However, both the ICF defendants and QHS admit to some extent that Plaintiffs' job titles and responsibilities were similar.  The ICF defendants go so far as to say that while the various "advisor" positions were originally intended to be different and distinct, "some of the duties of the . . . positions began to

14

overlap . . . [and] these positions acquired **similarity** over time." ICF Memo Opp., 4 (emphasis added). Likewise, QHS concedes that Plaintiffs were "subject to a [sic] similar job titles," and also notes that members of the "Housing Advisor" group sometimes "performed work in all three areas" of pre- and post-closings as well as appeals. QHS Memo Opp., 3 & 10. While QHS goes on to suggest that certification is improper because Plaintiffs did not perform "identical tasks," the threshold for a notice-stage §216(b) certification is not absolutely identical job tasks, but *similarity* of the plaintiff's overall employment situations. See Lima, 493 F. Supp. 2d at 798; Big Lots Stores, Inc., 2008 WL 2488629, *5-6. Because "'[s]imilarly situated' does not mean identically situated," QHS's argument on this point fails. Melson v. Directech Sw., Inc., 2008 WL 2598988, *4 (E.D. La. 2008). Furthermore, "[a] plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons may exist." Lima, 493 F. Supp. 2d at 798. The fact that the defendants in this case have admitted that Plaintiffs' jobs are similar should defeat any argument to the contrary. Furthermore, the admittedly overlapping job responsibilities, as well as the confusion in the currently meager record on the issue of Plaintiffs' job duties, suggest that a preliminary certification is appropriate to allow the parties to conduct further discovery on these issues. Finally,

as noted by the court in <u>Bernal</u>, the fact that "several plaintiffs have already opted in, and at least one has submitted an affidavit that supports Plaintiff's allegations" along with the affidavits and documents submitted by the named Plaintiffs, all support a conditional preliminary certification.  <u>Bernal</u>, 2008 WL at *4.  Two Plaintiffs have opted in to this proposed collective action under §216(b) since the filing of the instant motion, and thus certification at this point is appropriate.  See Rec. Docs. 65 & 69.

In addition, the cases cited in opposition by the defendants are distinguishable.  First, QHS cites <u>England v. New Century Financial Corp</u>., in which the court refused §216(b) collective action certification for a nationwide collective class of loan officers who worked under 70 different managers and who were allegedly instructed not to clock overtime.  370 F. Supp. 2d 504, 506 (M.D. La., 2005).  The <u>England</u> court refused initial certification because plaintiffs failed to meet the "similarly situated" requirement based on their supervision by different managers in different offices.  <u>Id</u>. at 511.  However, in this case, the proposed collective class is much smaller and does not rely solely on the decisions of different managers in different offices to limit overtime, but on an allegedly program-wide policy of under-recording overtime.  Plaintiffs have produced emails from QHS and ICF sources that tend to support their

program-wide allegation.  See Pls. Memo Supp., Exs. F-L.

Both QHS and the ICF entities also rely on the decision in Johnson v. Big Lots Stores, Inc., in which the court granted a motion to decertify the collective class under §216(b).  2008 WL 2488629 at *1.  However, Johnson is inapposite to the instant motion, as that case was decided after a preliminary certification had been made over defendant's opposition and after a full bench-trial had been conducted.  Id. at 2.

In addition, ICF relies on Horne v. United Services Automobile Association, in which the Middle District of Alabama denied a collective class certification at the preliminary stage. 279 F. Supp. 2d 1231, 1237 (M.D. Ala., 2003).  However, Horne involved a single employee, whose only proof that others were "similarly situated" was his own self-serving affidavit statements to that effect.  Id. at 1236-37.  As noted previously, several new Plaintiffs have already opted in to this potential collective action since this motion was filed, and thus this case is distinguishable from Horne.

Finally, ICF relies on the Sheffield v. Orius Corp. decision, which denied collective action certification based on the fact that the potential plaintiffs held different job titles, with different payment structures, at nine different work sites. 211 F.R.D. 411, 413 (D. Or. 2002).  Again, this case is distinguishable in that the potential plaintiffs did share

17

similar job titles and responsibilities.

As a final note on the issue of whether Plaintiffs have met the "similarly situated" requirement of a §216(b) collective action, the DOL audit reports themselves reveal that there were several "similarly situated" employees of QHS and ICF.  See Pls. Memo Supp., Exs. A & B.  Other courts have relied on DOL reports or audits as a grounds for certifying a collective action under §216(b) based on the "similarly situated" requirement.  See, e.g., Valcho v. Dallas County Hosp. Dist., 2008 WL 3891383, *4 (N.D. Tex., 2008); Carter v. Anderson Merchandisers, LP, 2008 WL 2783193, *5-6 (C.D. Cal., 2008); Guzman v. VLM, Inc., 2007 WL 2994278, *4  (E.D.N.Y., 2007); Fast v. Applebee's Intern., Inc., 243 F.R.D. 360, 363 (W.D. Mo., 2007).  In this case, Plaintiffs have produced a DOL audit report for both QHS and the ICF entities, indicating that they improperly classified certain Road Home positions as exempt.  The ICF audit, which was prompted by a call from a *QHS employee* regarding improper overtime payments, specifically considered whether "housing advisors and *persons occupying similar positions*" were properly exempted from the overtime provisions of the FLSA.  See Pls. Memo Supp., Ex. A at PF0005.  Likewise, the QHS audit report indicates that "housing advisors" employed by QHS, which QHS admits consisted of several different positions some of which engaged in multiple responsibilities, were improperly classified.  See Pls. Memo

Supp, Ex. B. at PF0038.  Finally, the DOL investigations did not distinguish among the geographically different locations of the various QHS and ICF offices in their determination that advisor and analyst positions were improperly exempt.  As such, the geographic disparity among potential opt-in Plaintiffs should not preclude a preliminary certification of a collective action. This Court has previously held that "collective action certification is not precluded by the fact that putative plaintiffs performed various jobs in differing departments and locations," and  "the law is plain that that [fact] does not undermine the 'similarly situated' requirement."  Donohue, 2004 WL 1161366, *2 (E.D. La. 2004).

In sum, Plaintiffs have produced more than mere conclusory affidavit statements on the issue of whether they were "similarly situated" under  §216(b).  First of all, the decision to certify a collective action at the preliminary notice stage "is usually based only on the pleadings and any affidavits" that make "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." Donohue, 2004 WL 1161366 at *1. As a result, Plaintiffs' affidavits in this case would suffice for a preliminary certification.  However, Plaintiffs have also produced documents from both the DOL and the individual defendants that tend, at this early stage, to support a collective action certification.

19

In fact, Plaintiffs' case is factually similar to the facts
before the <u>Melson</u> court, in which the court certified a
collective class of satellite installation and repair technicians
who were not paid for overtime worked and who were instructed to
not clock overtime hours.  <u>Melson</u>, , 2008 WL 2598988 at *1.  The
<u>Melson</u> court relied on affidavits and documentary evidence to
certify a nation-wide collective class against the plaintiffs'
employer based on allegations of non-payment of overtime and a
policy of punishing employees who clocked overtime work.  <u>Id</u>. at
*4.  Likewise, the affidavits and documentary evidence before the
Court on Plaintiffs' instant motion is sufficient for preliminary
certification of a collective class.

   **B.   The Class Definition**

        QHS argues that Plaintiffs' proposed class definition is
overly broad.  Plaintiffs agree that the specific reference to
the FLSA's "time and a half" provision should be removed in favor
of a general reference to the FLSA's overtime provisions.  Thus,
this change to the class definition should be made based on the
parties' agreement.

        The other changes proposed by QHS should not be granted.
First, QHS suggests that the vague reference to "Housing Advisor,
Analyst, or any similar position" should be narrowed to include
only "Housing Advisors or Appeals Analysts in the C.A.R.s
Department of the Road Home program."  QHS Memo Opp, 13.  Given

the fact that little to no discovery has been done, the fact that
both defendants admit that these positions were similar to some
extent, and the fact that the DOL audits themselves referred to
other "similar positions," this change to the class definition
should not be granted.  If further discovery reveals a factual
grounds for narrowing the class definition, the parties may file
motions to that effect when the issue is ripe.

Second, QHS suggests that the class definition should be
modified to account for the fact that many of the potentially
"similarly situated" Plaintiffs may have signed waivers of their
right to sue under §216(b) during the DOL monitored settlement
process.  Plaintiffs argue that while some of the potential class
members may have waived their rights *as to a particular job title
for a particular time period*, some of them may have acquired
different job positions after the settlement and for which they
did not waive their right to sue.  The decision in <u>Robertson v.
LTS Management Services, LLC</u> is instructive on this issue.  2008
WL 4559883 (W.D. Mo. Oct. 9, 2008).  In <u>Robertson</u>, the court
granted the plaintiffs' motion to certify a collective class
under §216(b).  <u>Id</u>.  However, the defendant sought summary
judgment on some of the plaintiffs' claims based on the fact that
they had signed a WH-58 waiver after a DOL settlement resulting
from an investigation of the defendant employer.  <u>Id</u>. at *7.  The
<u>Robertson</u> court denied the summary judgment as to both

plaintiffs, finding material issues of fact as to whether "the time records which defendants provided to the DOL were falsified or altered." Id. at *9.  While there are no allegations of deliberate alteration or falsification of records in this case, the questions regarding the completeness of Plaintiffs' recorded time as well as the possibility that some potential Plaintiffs may have changed positions after their waiver both suggest that the class definition should remain as proposed.  Again, if further discovery reveals that certain potential plaintiffs do not have claims, the parties can move to dismiss those members when that information is certain.  Accordingly,

IT IS ORDERED that Plaintiffs' **Motion to Certify a Collective Class of Persons Similarly Situated Pursuant to 29 U.S.C. 216(b)** (Rec. Doc. 42) is hereby **CONDITIONALLY GRANTED** under the first step of the Lusardi framework as set forth above.

New Orleans, Louisiana, this 31st day of October, 2008.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE